**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| | : | |
| **V.** | : | **CRIMINAL NUMBER 17-183-1** |
| | : | |
| | : | |
| **JOSE CRUZ RODRIGUEZ-DOMINGUEZ** | : | |

## DEFENDANT'S SENTENCING MEMORANDUM

Jose Cruz Rodriguez-Dominguez, files this memorandum in aid of mitigation at sentencing.   The defense has one substantive objection to the Presentence Investigation Report. In its current form, the Report concludes the advisory range is 8 to 14 months based on a total offense level 10, Criminal History Category II.  The defense objects to paragraph 25 and submits that no criminal history points should be assigned as the evidence of a conviction is inconclusive. According to the Report, Mr. Rodriguez pled guilty and was sentenced to a period of conditional discharge on May 19, 2009.  The same Report indicates Mr. Rodriguez was removed from the United States, specifically from Brownsville Texas, on January 2, 2009.  (PSR ¶26).   The government "surmises" in its sentencing memorandum (Dkt. No 11) that Mr. Rodriguez was sentence *in absentia*.  Such inconsistent and contrary information is unreliable and therefore no criminal history points should be assigned.  Mr. Rodriguez's criminal history category should therefore be category I.  A total offense level of 10, Criminal History Category I, yields an advisory range of 6 to 12 months in Zone B of the sentencing table.

In the event the Court does not sustain the defense objection, the defense respectfully submits that a variance is appropriate because the criminal history category overstates the

seriousness of Mr. Rodriguez's prior history.

Mr. Rodriguez has been in custody since March 9, 2017.[1] He will likely spend an additional week or two awaiting removal to Mexico. The defense respectfully seeks a sentence of time served. Given the particular facts and circumstances of this case, a sentence of time served is sufficient and not greater than necessary and fulfills sentencing goals pursuant to *United States v. Booker*, 543 U.S. 220 (2005) and the subsequent cases reaffirming its holding, and 18 U.S.C. §3553(a). A time served sentence represents a modest variance from the advisory range.

## I.    <u>PROCEDURAL HISTORY</u>

Mr. Rodriguez was indicted by a grand jury on April 6, 2017, and was charged with one count of illegal reentry in violation of 8 U.S.C. §1326(a) and (b)(1). Mr. Rodriguez pled guilty on May 22, 2017. Sentencing is scheduled for August 18, 2017.

## II.    <u>MR. RODRIGUEZ-DOMINGUEZ'S PERSONAL HISTORY</u>

Mr. Rodriguez comes from the very small town of Rosario, Mexico. Like many similarly charged defendants, he has close family members in Mexico as well as the United States. Mr. Rodriguez first came to the United States almost 20 years ago and has significant ties as well as work history here. Like many others, he came to the United States for a better life having grown up in an impoverished household. Mr. Rodriguez has always worked while in the United States. Mr. Rodriguez was arrested by local police while at work.

In 1999, while in the United States, Mr. Rodriguez met Mirna Elizabeth Cruz-Guerrero. Ms. Cruz-Guerrero is a citizen of El Salvador. The two married in 2008 and have three children,

---

[1] The period of time beginning March 9, 2017, includes the time spent in immigration custody prior to Mr. Rodriguez making his initial appearance on April 7, 2017.

all born in the United States.  The marriage was not without significant problems.  Mr. Rodriguez described his ex-wife as having a significant drinking problem.  The two separated in 2011.  Their children, now ages 17, 11 and 9, lived with Ms. Cruz in Virginia.  Mr. Rodriguez was removed to Mexico two years after the couple separated.  At some point after his 2013 removal to Mexico, Ms. Cruz was deported to her native country of El Salvador.  For a period of time, his children were left without adult supervision in Virginia.  The deportation of both parents necessitated the children being uprooted from their home in Virginia and relocating to Amityville, New York to live with their paternal grandmother.  Mr. Rodriguez had frequent communication with his mother and children and learned his mother was struggling to take care of her grandchildren.  This tremendous upheaval and the well-being of his three children and his mother, compelled him to return to the United States.  He knew he was breaking the law and he knew he put his freedom at risk.  Nevertheless, Mr. Rodriguez was concerned that the separation of his children from their mother was emotionally overwhelming for them.   He was also concerned about the physical and financial burdens heaped upon his mother, who is 74 years old.  Mr. Rodriguez's brother, who also resides in Amityville, had been assisting with the children and helping his mother with finances.  Mr. Rodriguez felt it was too burdensome, as his brother has his own family.  Mr. Rodriguez is making plans to bring his children to Mexico after the 2017-2018 school year ends.  He does not want them to miss school as they have already been held back a year after leaving Virginia and enrolling in school in New York.  He is determined not to return and has set his goal on making a new life for his children in Mexico.  He described prison as very difficult to endure and not worth the risk of his freedom.

As noted in paragraph 26 of the PSR, Mr. Rodriguez was previously prosecuted for illegal reentry, nine years ago.  He served approximately two months in prison before being

deported three weeks later. Mr. Rodriguez has been incarcerated for roughly five months including the period of time spent in ICE custody.

Mr. Rodriguez has been steadily employed.  He worked for his brother's construction company.  For a significant period of time he worked for a landscaping company, Final Touch, located in Long Island.  More recently, he was employed by a clothing donation/recycling company driving a truck to various donation sites.  Mr. Rodriguez was arrested for misdemeanor offenses when he, along with some coworkers, got into a dispute with employees from another clothing recycling company regarding proprietary rights over clothing donations. Police were called to the scene during the dispute and arrested Mr. Rodriguez.  Mr. Rodriguez attended a court hearing at which time immigration authorities confronted him. Mr. Rodriguez confessed to authorities he had entered illegally.  Mr. Rodriguez has never used an alias and ICE agents quickly verified the veracity of Mr. Rodriguez's identity and confession.

Mr. Rodriguez is consumed with anxiety over the welfare of his children. He understands he faces more dire consequences if he returns again.  Additionally, he knows that the current political climate reflects a heightened priority of harsher penalties for offenders.  For this reason, and because neither parent is able to reside in the United States, he has begun making plans for his children to move to Mexico.

Mr. Rodriguez's work ethic and devotion to his children was confirmed by his sister in an interview with the probation officer.  Socorro Rodriguez described her brother as "multi-talented" having been employed at all types of jobs over the years, as his family depends on him.

## III.  APPLICATION OF THE STATUTORY FACTORS TO THIS CASE

The Court must consider all of the factors identified in 18 U.S.C. §3553(a) and impose a sentence that is "sufficient, but not greater than necessary" to satisfy the purposes of sentencing.

18 U.S.C.§3553(a)(1).

Mr. Rodriguez has a significant work history, albeit undocumented.  There is no evidence of drug or alcohol problems.  While incarcerated, he has been trying to learn English which he hopes to be able to utilize for better employment prospects in Mexico.  He has a prior conviction for illegal reentry.  He is a devoted father whose motivation to cross the border was to reunite with his three children who have been through quite a bit of trauma.  He was also largely motivated by what he deems as his responsibility, that is, taking care of his children and not adding physical and financial burdens to his mother and sibling.

This is a non-violent offense, with no specific harm done to any identifiable victims. Mr. The guidelines generally account for harm in calculating the offense level, but not at all for the motive for committing an offense.  Motive is arguably is highly relevant. A sentence of time served would not promote a lack of respect for the law as such a sentence is within the advisory range or modestly below the advisory range if the Court does not sustain the defense objection. Mr. Rodriguez is presently incarcerated and will remain in custody until his removal.

A sentence above time served is neither warranted nor necessary to further deter Mr. Rodriguez.  He returned to the United States fully understanding the law and the likelihood of incarceration if found.  The basis for his return-his family—is a situation he hopes will be altered in the near future when his children relocate to be with him.

Mr. Rodriguez poses no threat to the public.  He will be returned to immigration custody for deportation upon completion of his sentence.  Protection of the public is of diminished concern in this case.  There is no restitution owed in this matter.  He is skilled in construction and landscaping.  There is no need for vocational or educational training and he is in good health.

The defense respectfully asks the Court not to impose an additional period of supervised release.  U.S.S.G. §5D1.1(c) discourages the Court from imposing a period of supervised release. It reads as follows: The court ordinarily should not impose a term of supervised release in a case in which supervised release is not required by statute and the defendant is a deportable alien who likely will be deported after imprisonment.

For the reasons outlined above as well as any other reasons the Court deems relevant, the defense respectfully asks the Court to impose time served.

Respectfully submitted,

*/s/ Maranna J. Meehan*
MARANNA J. MEEHAN
Assistant Federal Defender

## CERTIFICATE OF SERVICE

I, Maranna J. Meehan, Assistant Federal Defender, Federal Community Defender Office for the Eastern District of Pennsylvania, hereby certify that I have served a copy of the Defendant's Sentencing Memorandum, by electronic notification or hand delivery to his office, upon Sean P. McDonnell, Assistant United States Attorney, office located at 615 Chestnut Street, Suite 1250, Philadelphia, Pennsylvania 19106.

_/s/ Maranna J. Meehan_
MARANNA J. MEEHAN
Assistant Federal Defender

DATE:        August 15, 2017